UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   **CV 14-09882 SJO (VBKx)**          DATE:  **April 1, 2015**

TITLE:      **Christopher Gordon v. Digital Basement, LLC**

========================================================================
PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                           Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**         **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS** [Docket No. 15]

This matter is before the Court on Defendant/Counter-Claimant Digital Basement, LLC's ("Defendant") Motion to Stay Proceedings ("Motion"), filed February 27, 2015. Plaintiff/Counter-Defendant Christopher Gordon ("Plaintiff") filed an opposition to the Motion ("Opposition") on March 16, 2015.  Defendant filed a Reply on March 23, 2015.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for April 6, 2015.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **DENIES** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following.  On January 18, 2011, Plaintiff published a video on YouTube entitled "*The Crazy Nastyass Honey Badger (original narration by Randall)*," and consisting of a humorous narration describing the traits of the honey badger (the "Video").  (Compl. ¶ 9, ECF No. 1.)  After the video received a great deal of publicity, Plaintiff copyrighted his narration of the Video and trademarked the phrase "Honey Badger Don't Care" in 2011 (the "Trademark" or "Mark").  (Compl. ¶¶ 9-12, Exs. A-B.)  Plaintiff also produced and sold goods bearing his Mark, including t-shirts,  on the internet.  (Compl. ¶¶ 13-14.)

Defendant is Plaintiff's competitor in that it also produces and sells t-shirts and other merchandise online.  (Compl. ¶ 18.)  On July 25, 2014 Plaintiff sent Defendant a cease and desist letter, demanding *inter alia*, that Defendant stop selling merchandise that infringes on Plaintiff's Trademark.  (Compl. ¶¶ 19-23; Decl. of Daniel Reback in Supp. of [Opp'n] ("Reback Decl.") ¶ 4, ECF No. 17-1, Ex. 1 (the "Letter"), ECF No. 17-2.)  The Letter indicated that without a satisfactory written response to Plaintiff's demands by August 1, 2014, Plaintiff would have no alternative but to commence litigation without further notice.  (Letter 3; *see also* Decl. of Charles H. Hooker III in Supp. Of [Mot.] ("Hooker Decl.") ¶ 2, ECF No. 15-2.)

MINUTES FORM 11
CIVIL GEN                           Page 1 of   7          Initials of Preparer _____

__ : __

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   **CV 14-09882 SJO (VBKx)**              DATE:   **April 1, 2015**

On August 1, 2014, Defendant responded to the Letter indicating that Defendant:  (1)  no longer sold merchandise bearing Plaintiff's Trademark; and (2) did not violate the Trademark because the phrase "Honey Badger Don't Care" was used solely as an ornamental design and not as an indication of source.  (Reback Decl. ¶ 5, Ex. 2 ("Response").)  Three days later, Plaintiff replied with a letter delineating how Defendant was liable for trademark and copyright infringement.  (Reback Decl. ¶ 6, Ex. 3 (the "Second Letter").)  The Second Letter also maintained that the removal of the infringing merchandise from Defendant's website was insufficient to remedy the damage to Plaintiff and requested financial information regarding sales of merchandise bearing the Trademark, as well as responses to the other requests in the previous Letter.  (*See generally* Second Letter.)  Plaintiff concluded the Second Letter by advising Defendant that he would pursue all rights against the company without further notice should Defendant refuse to produce the requested information or fail to engage in a settlement dialogue.  (Second Letter 3.)  On August 14, 2014, Defendant's counsel replied to the Second Letter by denying Plaintiff's copyright and trademark infringement allegations but agreeing to Plaintiff's request for injunctive relief regarding the sale of merchandise bearing the Trademark.  (*See generally* Reback Decl. ¶ 7, Ex. 4 ("Second Response"); *see also* Hooker Decl. ¶ 4, Ex. 3, ECF No. 15-4.)  Defendant's counsel also proposed a telephone conversation to further discuss the matter.  (Second Response 4.)  Neither Defendant nor its counsel received a reply to the Second Response, (Hooker Decl. ¶ 5), and Defendant's counsel did not follow up with Plaintiff regarding this letter or suggest a specific time to speak by telephone.  (Reback Decl. ¶ 8.)

Between August 14, 2014, and December 17, 2014, Plaintiff alleges that there was no communication between the parties while he "further investigated the assertions made by [Defendant] and researched the company's liability." (Reback Decl. ¶ 8.) On December 18, 2014, via email, Plaintiff expressed a desire to reach an amicable resolution, asked Defendant to sign a tolling agreement, and advised Defendant that he would be forced to immediately commence litigation should Defendant refuse to sign the tolling agreement by December 22, 2014.  (*See generally* Reback Decl. ¶ 9, Ex. 5 (the "Email"); Hooker Decl. ¶ 6, Ex. 4.)

On December 23, 2014, Defendant filed suit in the United States District Court for the Northern District of Georgia (the "Georgia Court") seeking:  (1) cancellation of Plaintiff's Trademark; (2) a declaration that, among other things, Defendant did not infringe on Plaintiff's copyright or trademark rights; and (3) an injunction prohibiting Plaintiff from threatening to file suit or filing suit against Defendant in connection with these claims (the "Georgia Action").  (*See generally* Hooker Decl. ¶ 7, Ex. 5 ("Georgia Compl.").)  Prior to filing the Georgia Action, Defendant had not responded to Plaintiff's December 18, 2014 request to sign a tolling agreement.  (Reback Decl. ¶ 10.)  Plaintiff filed the instant lawsuit in this Court on December 29, 2014 (the "California Action").  (*See generally* Compl.)  In the Complaint, Plaintiff brings six causes of action for: (1) trademark infringement pursuant to 15 U.S.C. §§ 1114, *et seq.*; (2) trademark infringement under California law; (3) trademark dilution; (4) unfair competition and false designation of origin

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 14-09882 SJO (VBKx)**          **DATE:   April 1, 2015**

pursuant to 15 U.S.C. § 1125(a); (5) unfair competition pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (6) copyright infringement pursuant to 17 U.S.C. § 501.  (*See generally* Compl.)

On February 6, 2015, Defendant filed a motion to enjoin the California Action in the Georgia Court. (Hooker Decl. ¶ 9, Ex. 6 ("Mot. to Enjoin").)  On February 23, 2015, Defendant also filed a motion for limited discovery concerning personal jurisdiction over Plaintiff in the Georgia Action.  (Hooker Decl. ¶ 10, Ex. 7 ("Mot. for Limited Discovery"), ECF No. 15-7.)  Plaintiff filed a motion to dismiss the Georgia Action on February 25, 2015.  (Hooker Decl. ¶ 11, Ex. 8 ("Mot. to Dismiss").)

On February 27, 2015, Defendant filed the instant Motion to stay the proceedings in the California Action pending the resolution of the Motion to Enjoin, Motion for Limited Discovery, and Motion to Dismiss in the Georgia Action.  (*See generally* Mot., ECF No. 15-1.)  Judge Steve C. Jones of the Georgia Court denied the Motion for Limited Discovery on March 5, 2015.  (Reback Decl. ¶ 20, Ex. 10, ECF No. 17-3.)

II.      DISCUSSION

      A.      The First to File Rule

In the Motion, Defendant asserts that because Defendant filed the Georgia Action before Plaintiff filed this lawsuit in California, "under the First to File rule, and in keeping with the longstanding principles of comity, this Court should stay the California Action pending a ruling from the [Georgia Court] on the issue of which of the parties' parallel actions should proceed."  (Mot. 3.)  For the following reasons, the Court disagrees.

The first to file rule is a "doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  *Pacesetters Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (citations omitted).  There are three threshold factors to be "considered in deciding whether to apply the first-to-file rule:  (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."  *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); *Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D. Cal. 1994)).  The rule was developed to promote efficiency and should not be disregarded lightly.  *Alltrade*, 946 F.2d at 625 (citations omitted).

Here, because the Georgia Action was filed first, and the parties and issues are substantially similar, (*compare* Compl., *with* Georgia Compl.), there is no dispute as to whether the rule's threshold factors are satisfied.  *See Guthy-Renker* 179 F.R.D. at 270.  However, the first to file rule

MINUTES FORM 11
CIVIL GEN                                    Page 3 of  7                        __ : __

Initials of Preparer _____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 14-09882 SJO (VBKx)**          **DATE:   April 1, 2015**

"is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."  *Pacesetters*, 678 F.2d at 95.

     B.       Exceptions to the First to File Rule

          1.     Legal Standard

"The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping," *Alltrade*, 946 F.2d at 628 (citations omitted), and district courts may rely on these equitable grounds when determining "whether to depart from the first to file rule."  *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006).  A suit is "anticipatory" if the plaintiff in the first-filed action brought the lawsuit after receiving specific and concrete indications that a suit by the defendant was "imminent."  *Id.* at 1192-93 (citing *Guthy-Renker*, 179 F.R.D. at 271).  Courts recognize the anticipatory filing exception to the first to file rule in order to prevent a party from "rac[ing] to the courthouse" to preempt a later suit in a different forum.  *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993).

Declaratory judgment actions filed in response to discussions seeking settlement and threatening imminent litigation are disfavored where there is a second-filed action that seeks coercive relief on the same claims.  *See, e.g., Xoxide*, 448 F. Supp. 2d at 1193 (where a first-filed declaratory judgment action has been triggered by a cease and desist letter seeking settlement and threatening imminent litigation, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first.); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) (where parallel cases involve a declaratory judgment action and a mirror-image suit filed for coercive relief, the coercive action is generally given priority irrespective of which suit was filed first) (collecting cases).  In *Xoxide,* the suit was filed during settlement discussions between plaintiff and defendant and after defendant proposed a settlement agreement and threatened litigation should plaintiff fail to comply with the agreement.  448 F. Supp. 2d at 1193.   In its decision, the court found that plaintiff "was warned from the outset" that failing to comply with the proposed agreement would lead to litigation, and the delay of defendant's suit for coercive relief was justified by plaintiff's acquiescence to several demands during the discussions.  *Id.*  Thus, the *Xoxide* court concluded that the plaintiff's lawsuit seeking a declaratory judgment was anticipatory and a method of forum shopping.  *Id.*

          2.     Analysis

Here, as in *Xoxide*, Defendant's Georgia Action, in which it seeks declaratory and other relief, was filed after receiving specific and concrete indications from Plaintiff that a suit was imminent.  After negotiations between the two parties stalled, Plaintiff's counsel sent an Email requesting that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   **CV 14-09882 SJO (VBKx)**          DATE:   **April 1, 2015**

Defendant sign a tolling agreement rather than engage in imminent litigation.  (*See generally* Email.)  The Email also threatened to **immediately** commence litigation should Defendant fail to sign the agreement.  (Email 1 (emphasis added).)  The day after Plaintiff's deadline passed, Defendant filed the Georgia Action.  (*See generally* Georgia Compl.)  Thus, the anticipatory nature of the Georgia Action suffices to establish a proper exception to the first to file rule.  *See Xoxide*, 448 F. Supp. 2d at 1193.  This is in part because applying the first to file rule under these circumstances "would thwart settlement [and] encourage intellectual property holders to file suit rather than communicate with an alleged infringer."  *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.,* No. CV 06-01848 H, 2006 WL 4117032, at *3-4 (S.D. Cal. Nov. 21, 2006).

Defendant argues that the Georgia Action was not filed in anticipation of imminent litigation because Plaintiff had repeatedly failed to act on his threat to file suit.  (Reply 8[1], ECF No. 21.)  Defendant argues that Plaintiff's December Email was merely another unfulfilled threat and cites *Verizon Commc'ns, Inc., v. Inverizon Int'l, Inc.*, 295 F.3d 870, 874 (8th Cir. 2002), for the proposition that unspecified and unfulfilled threats are an insufficient basis for setting aside the first to file rule. (Reply 8.)  *Verizon,* however, is distinguishable.  There, the court found that the cease and desist letter sent to the plaintiff stated only that the defendant would prefer to avoid unnecessary legal action and that a timely response "may obviate more formal legal action."  295 F.3d at 874.  Here, by contrast, Plaintiff's counsel admonished Defendant that Plaintiff would immediately commence litigation if Defendant did not sign the proposed tolling agreement by December 22, 2014.  (*See generally* Email.)

Defendant also cites *M.D. Beauty Inc. v. Dennis F. Gross, M.D. P.C.*, No. CV 03-03082 SBA, 2003 WL 24056263, at *4 (N.D. Cal. Oct. 27, 2003), for the proposition that the discussions in the correspondence between Plaintiff and Defendant only created a permissible "apprehension of litigation," and not a scenario of an anticipatory filing.  (Reply 9.)  However, in rejecting the anticipatory filing exception, the *M.D. Beauty* court held that the demand letters sent by the plaintiff were insufficient to establish an imminent threat of litigation.  *Id.* at *4.  The court reasoned that the letters threatened to pursue "alternatives" if the defendant did not respond by the deadline, suggesting there were imminent possibilities other than litigation.  *Id.*  Here, Plaintiff's counsel asserted that the only alternative to signing the tolling agreement would be the immediate commencement of litigation.  (*See generally* Email.)

---

[1]  Defendant's Reply, which is eighteen pages in length, fails to comply with this Court's five-page limit for reply briefs.  (*See* Initial Standing Order ("ISO") ¶ 21, ECF No. 9.)  In order to fully consider the parties' arguments for the purpose of adjudicating this Motion, the Court elects to consider Defendant's overlong Reply.  However, Defendant is admonished to abide by this Court's ISO and the Local Rules in all future proceedings or risk sanctions.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  __CV 14-09882 SJO (VBKx)__          DATE:  __April 1, 2015__

Additionally, Defendant argues that Plaintiff's reliance on *Xoxide* to establish an anticipatory filing is without merit.  (Reply 8. n. 8.)  Defendant contends that unlike the parties before this Court, the party that filed the declaratory judgment suit in *Xoxide* had "inched closer to acceding [the opposing party's] requests" with each correspondence between them.  (Reply 8. n. 8.)  This argument is unavailing.  Here, much like in *Xoxide,* Defendant denied liability for copyright and trademark infringement but moved closer to acceding to Plaintiff's requests by agreeing to Plaintiff's demand for injunctive relief regarding the sale of merchandise bearing the Trademark.  (*See generally* Second Response.)  Additionally, although Defendant only met one of the two response deadlines set forth by Plaintiff, this is not enough to distinguish the applicability of the *Xoxide* holding.

Finally, Defendant cites *Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. CV 11-01892 EMC, 2012 WL 3277222, at *6 (N.D. Cal. 2012), to support its argument that its declaratory judgment action, filed only one day the expiration of the deadline described in Plaintiff's Email, was not an improper anticipatory suit.  (Reply 9.)  In *Payless*, however, Payless' final letter before National Union filed its declaratory judgment action stated that "Payless is currently considering impleading National Union into [another] action so that a complete resolution of coverage issues with respect to Payless can be obtained."  *Id.* at *1-2 (original emphasis omitted).  Plaintiff's threat of immediate litigation is readily distinguishable from Payless' solitary statement that it was **considering** impleading the plaintiff in a separate action.  Further, unlike in the parties *Payless*, which had been in constant negotiations for four months, Plaintiff and Defendant did not communicate at all between August 14, 2014, and December 18, 2014.  (Reback Decl. ¶ 18.) The parties failure to communicate during this period, coupled with Defendant's decision to file the Georgia Action one day after Plaintiff's deadline for signing the tolling agreement expired, strongly suggests that Defendant raced to the courthouse and filed the Georgia Action in anticipation of a lawsuit by Plaintiff.[2]

---

[2]  Defendant cites *Guthy-Renker* to show that suits filed in response to demand letters specifically stating the intention avoid litigation are not anticipatory.  (Mot. 8.)  Defendant mischaracterizes *Guthy-Renker*'s holding.  There, the language in the demand letters that convey the desire to avoid litigation were supplemented by the declaration of the defendant's president.  *Guthy-Renker*, 179 F.R.D. at 271.  In his declaration, the president indicated he did not threaten to sue the plaintiff nor did he have intention of bringing suit.  *Id.*  The court used this declaration, in conjunction with the demand letters, to conclude that there was no concrete threat of imminent litigation.  *Ia.*  There are no comparable supplemental materials here.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 14-09882 SJO (VBKx)**          **DATE:  April 1, 2015**

For these reasons, the Court finds that the anticipatory filing exception to the first to file rule applies.  Thus, the Court **DENIES** the Motion.

> C.      Forum *Non Conveniens*

Forum *non conveniens* arguments "should be addressed to the court in the first-filed action." *Pacesetters*, 678 F.2d at 96.  Thus, "[a]pprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for [this Court's] consideration."   *Id.*  Accordingly, the Court will not field Plaintiff's or Defendant's arguments on this issue.

III.     RULING

For the foregoing reasons, the Court **DENIES** Defendant's Motion.

IT IS SO ORDERED.